Argued and submitted June 13,
reversed and remanded September 2, 1980

BEASLEY,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(No. C5-2002-YPQ000-7, CA 16765)

616 P2d 517

William L. Tufts, Eugene, argued the cause for petitioner. With him on the brief were Robert E. Krambs and Barber & Krambs, Eugene.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an appeal from the denial of medical assistance benefits (Medicaid) to petitioner's minor son, Rick Beasley, by the Adult and Family Services Division of the Oregon Department of Human Resources (AFSD). Petitioner seeks Medicaid benefits of approximately $11,000 to cover medical expenses incurred during his son's hospitalization in an Oregon psychiatric hospital. We reverse and remand for further findings.

The Hearings Unit of AFSD upheld the denial of Medicaid benefits to petitioner's son after a contested case hearing held on August 2, 1978, pursuant to the Administrative Procedures Act, ORS 183.413 to 183.470, and affirmed its earlier decision after a rehearing on August 21, 1979. At the original hearing, the following pertinent findings of fact, which were adopted at the rehearing, were made:

"I

"During 10-72 Rick Beasley, now aged 14, commenced living with [petitioner] in the State of California.

"II

"[Petitioner] adopted Rick with said adoption being finalized on 10-23-75.

"III

"San Diego County has assisted [petitioner] through its Aid to Adoption Program from the start, presumably to assist the adoptive placement of the child because of his existing 'serious emotional problems' which are ongoing. Through the mentioned program the county has assisted financially by sending [petitioner] $1,235.00 per month on Rick's behalf while he receives institutional care and has authorized then and now Medi-Cal (Title XIX medical) coverage until Rick reaches 18.

"IV

"[Petitioner] moved to Oregon from California on 8-9-77.

"V

"Prior to 3-27-78, Rick was institutionalized for a time at the 'Devereux Foundation' in Santa Barbara.

"VI

"On 3-37-78 Rick removed from Devereux to Cedar Hills Hospital in Portland as an in-patient receiving psychiatric care.
"* * *

"VIII

"On 3-27-78 [petitioner] applied to the Hillsboro Branch Office, AFS; on Rick's behalf for coverage of the Cedar Hills Hospitalization.

"IX

"The Hillsboro Branch Office instituted the application process, part of which was correspondence to San Diego County, Department of Public Welfare, requesting clarification of Rick's status.

"X

"In response, a letter from San Diego County, dated 4-18-78, was directed to the Hillsboro Branch Office; its text read:
· 'The money available to Frank Beasley for Rick's care comes to him through the Aid to Adoption program of the State of California. * * *.

'In addition, he receives a Medi-Cal [Medicare] card for Rick. The use of his card requires prior authorization for regular medical care. It will not cover long term inpatient psychiatric care. Coverage for weekly psychiatric treatment may be covered if prior authorization is obtained. * * *.'

"XI

"Cedar Hills also corresponded to California's Department of Health, Medi-Cal Field Office in San Francisco. Their response in the text, dated 6-1-78 reads:

'This will confirm our telephone discussion of May 25th in which I told you that Rick's hospitalization could not be paid for by the Medi-Cal program because prior authorization has not been obtained. * * *.'                                              '‚

"XII

"[Petitioner] did submit Rick's Medi-Cal cards to Cedar Hills with the hospital informing him that 'these cards are not valid at our facility.' "

To summarize, petitioner's son was eligible in California for both Medicaid funds (pursuant to Title XIX of the Social Security Act, 42 U.S.C. 1396, *et seq.)* and the funds from California's Aid to Adoption program. Petitioner did receive funds from California's Aid to Adoption program of $1,235 per month while his son was hospitalized in Oregon. Petitioner did not receive any Medicaid funds from California during this period of hospitalization because there was no prior authorization.

Denial of benefits was upheld after the first hearing because eligibility for Medicaid in California was deemed a "prior resource;" however, this rationale was abandoned at the rehearing. AFSD agreed that "one state's Title XIX program and eligibility for the same cannot be considered as a ‚prior resource to another state's Title XIX program." The denial was nevertheless upheld on rehearing because the hearings officer adopted AFSD's alternative rationale:

" 'Rick was and continues to be ineligible for Title XIX [ Medicaid] from Oregon because he is eligible for Title XIX [Medicaid] from California. Oregon's role as required by 42 CFR 431.52(c) is to help Medi-Cal facilitate services to their recipient out-of-state.' "[1]

Because Oregon's Medicaid program is federally funded, the program must be consistent with

---

[1] 42 C.F.R. 431.52(c) became effective on October 1, 1978, and stated:

"* * * The plan must provide that the State will establish pro-

federal law and, in particular, federal Title XIX regulations. *See Western Mercantile v. Froats,* 21 Or App 703, 705, 536 P2d 549 (1975). Neither respondent nor petitioner has cited any federal or state law holding that eligibility for Medicaid benefits in one state precludes eligibility for Medicaid in another state. We have been unable to discover any authority for this conclusion. However, there was in effect at the time a federal regulation, 42 C.F.R. 448.50(3)(b), which required that states participating in the Title XIX program provide Medicaid to residents who met the other eligibility requirements. This regulation provided:

> "* * * *Condition for plan approval.* A State plan under title XIX of the Act may not impose any resident requirement which excludes any individual who is a resident of the State. For purposes of this section:

> "(1)  A resident of a State is one who is living in the State voluntarily with the intention of making his home there and not for a temporary purpose. A child is a resident of the State in which he is living other than on a temporary basis. Residence may not depend upon the reason for which the individual entered the State, except insofar as it may bear upon whether he is there voluntarily or for a 'temporary purpose.'

> "(2)  Residence is retained until abandoned. Temporary absence from the State, with subsequent returns to the State, or intent to return when the purposes of the absence have been accomplished, does not interrupt continuity of residence."

---

cedures to facilitate the furnishing of medical services to individuals who are present in the State and are *eligible* for medicaid under another State's plan." (Emphasis supplied.)

At the time of the denial of benefits and the first hearing, 42 C.F.R. 431.52(c) was not in effect. Its predecessor 42 C.F.R. 448.40(a)(3) stated:

> "* * * The State agency will facilitate the meeting of medical needs within the State for *residents'* from other States. * * *." (Emphasis supplied.)

That is, Oregon owed non-residents the duty of facilitating their receipt of out-of-state funds while present in Oregon.

Thereafter, this provision was revised for clarification. Effective October 1, 1978, the regulation, now renumbered 42 C.F.R. 435.403, stated:

"* * * * *

"(a) *The agency must provide medicaid to otherwise eligible residents of the State.*

"(b) For purposes of this section—

"(1) 'Resident' of a State is an individual who is living in the State voluntarily with the intention of making his home there and is not living in the State for a temporary purpose. A child is a resident of the State in which he is living other than on a temporary basis.

"(2) In determining residence, the agency may not consider the reason for which the individual entered the State, except to the extent that the reason may bear upon whether he is residing in the State voluntarily or for a temporary purpose.

"(3) An individual retains his residence until he abandons it. Temporary absence from the State, with subsequent returns to the State or intent to return when the purposes of the absence have been accomplished does not interrupt residence." (Emphasis added).[2]

The commentary to the revision indicates that no policy changes were made in the existing regulations. We conclude that federal law required a state 1) to make a determination as to whether an applicant was a resident and, 2) if the applicant was a resident

---

[2] 42 C.F.R. 435.403 was subsequently amended, but it continues to contain the requirement that states provide Medicaid to otherwise eligible residents.

The criteria for determining residency was greatly refined. Residence is no longer determined according to whether an individual is temporarily or permanently present in the state. Residency involves factors such as age, placement in an institution, agency involvement in placement, the basis for Medicaid eligibility, as well as intent.

States are prohibited by Section h, Subsection 3 of the regulation from denying benefits to residents temporarily absent from the state unless another state has determined that the individual is a resident there.

States may agree, among themselves, on rules and procedures to resolve residence disputes that do not violate the residency requirements.

and "otherwise eligible," to provide Medicaid benefits.[3]

■■ The threshold question of whether petitioner's son was an Oregon resident was not reached in the decision below. There is a finding of fact that petitioner's son was living in Oregon at the time of the denial, but there is no finding concerning the permanent or temporary nature of his presence in Oregon.[4] Neither is the finding that petitioner's son was eligible for Medicaid in California sufficient to establish that petitioner's son was not an Oregon resident. The fact that petitioner's son at some previous time was "eligible" in California for Medicaid *does not necessarily* preclude Oregon residency and Oregon's concomitant duty to provide Medicaid to "otherwise eligible residents." Petitioner's son would be an Oregon resident if 1) he was living in Oregon and 2) his presence was not on a temporary basis, regardless of his eligibility for benefits in California.

Inasmuch as the findings of fact in this case are not sufficient to permit a determination of petitioner's son's residency, this matter must be remanded to determine if 1) petitioner's son was an Oregon resident and, if he was, 2) if he was "otherwise eligible" for Medicaid benefits. *See Home Plate v. OLCC,* 20 Or App 188, 190, 530 P2d 862 (1965).

Reversed and remanded.

---

[3] In Oregon, an individual had to be "categorically needy" or "medically needy" to be eligible for Medicaid. ORS 414.032. This individual also had to be an Oregon resident. ORS 414.025.

[4] Although there was no finding as to petitioner's intent to leave and remove his son from Oregon, testimony was given at the original hearing as follows:

"[PETITIONER]: I, I, I feel that I'm a full-fledged resident of Oregon, have been paying taxes since 1970 and I consider myself a resident. I don't know when you become a resident.

"HEARINGS OFFICER: Do you intend to stay here?

"[PETITIONER]: I don't have any intention of leaving."